Sarah E. **WALKER**

v.

The **UNITED STATES**.

No. 134–69.

United States Court of Claims.
July 15, 1970.

Ralph H. Bearden, Jr., Miami, Fla., attorney of record, for plaintiff.

Howard O. Sigmond, Washington, D. C., with whom was Asst. Atty. Gen., Shiro Kashiwa, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

COWEN, Chief Judge.

In 1962, the United States filed in the United States District Court for the Middle District of Florida complaints and declarations of taking to acquire certain lands in Brevard County, Florida, for use in connection with the Space Program. Included were certain lands situated in the Titusville Beach Subdivision. Sarah E. Walker claimed ownership of a portion of the lands being condemned and intervened in the suits to

recover her claimed share of the proceeds. On May 2, 1968, the district court rendered its decision, holding that Mrs. Walker was not entitled to any portion of the amount paid by the United States for the condemnation of the property, United States v. 329.22 Acres of Land, Etc., Brevard Co., D.C.Fla., 307 F.Supp. 34 (1968). On appeal, the decision of the district court was affirmed by the Fifth Circuit on October 13, 1969. United States v. 936.71 Acres of Land, State of Fla., 418 F.2d 551 (1969).

In order to meet its needs for the Space Program, the United States also acquired by purchase from the owners of record certain additional lands in Brevard County, Florida, including lots and parcels in the Titusville Beach Subdivision. On June 8, 1964, while the condemnation suits were still pending in the district court, Sarah E. Walker filed a complaint against the United States in the United States District Court for the Middle District of Florida, which was docketed as No. 64–70 Civ. Among other things, she claimed ownership to the lands so acquired by the United States and asserted it was the holder of a jurisdictionally defective chain of title, resulting from fraudulent and invalid tax certificates, tax deeds, and masters' deeds through which defendant's predecessors in title acquired the land. She also alleged that the United States, by filing in the public records of Brevard County a project map of the Titusville Beach Subdivision, had illegally taken from plaintiff certain beaches and riparian rights in the beach area. In her prayer for relief, she requested the court: (a) to enter an order cancelling the tax deeds and masters' deeds, (b) to issue a decree that she owned the beaches and riparian rights in the Titusville Beach Subdivision, and (c) to enter a judgment granting her just compensation for the value of the properties taken by the United States.

On motion of plaintiff, proceedings in Docket No. 64–70 were stayed pending the decision of the Fifth Circuit on appeal from the district court's decision in the condemnation cases. On November 22, 1968, the United States filed a motion for summary judgment and on February 27, 1969, the district court determined that the litigation was exclusively within the jurisdiction of the Court of Claims and entered an order transferring the case to this court.

Plaintiff's claim of ownership to the lands involved in this suit is based upon the fact that in 1925 Walker Properties, Inc., a Florida corporation, became the owner of most of the area known as the Titusville Beach Subdivision. Walker Properties, Inc., was dissolved by proclamation of the Governor on November 23, 1936, for failure to pay its corporation capital stock tax. At the time of the dissolution of the corporation, the last Board of Directors and stockholders were as follows:

George R. Walker ... (996 shares)
F. A. Newell ....... (2 shares)
F. N. Boudreau .... (2 shares)

George Walker, the husband of plaintiff, died January 29, 1953, and it has been determined in a previous judicial proceeding that, under Florida law, plaintiff succeeded to Mr. Walker's $^{996}/_{1000}$ interest in the stock of the corporation. By virtue of a quitclaim deed executed by F. N. Boudreau in her favor in 1963, she asserts that she acquired an additional $^{1}/_{500}$ interest in the stock of the dissolved corporation.

In her complaint (plaintiff's petition) pending before us, plaintiff included certain lands in the Titusville Beach Subdivision which were covered by the judgments entered in the condemnation suits. She now concedes that the decision of the Fifth Circuit in those actions is res judicata of her rights as to such land and has abandoned any claim with respect to them. As a result, the only lands in controversy in this suit now are portions of Blocks 1 through 19 and the ocean-front property lying east of Ocean Boulevard, all in the Titusville Beach Subdivision.

Defendant has filed a motion for summary judgment, supported by documents and affidavits, with respect to all of the land in issue. Plaintiff has filed a motion for partial summary judgment with respect to the property lying east of Ocean Boulevard, and supports her motion by certain affidavits and documents. For the purpose of disposing of this litigation, we shall treat plaintiff's suit as an action to recover just compensation under the Tucker Act or the Fifth Amendment. We hold that there are no material issues of fact to be resolved by trial, that defendant's motion for summary judgment should be granted, and that plaintiff's motion for partial summary judgment should be denied.

For convenience, the lands in controversy have been placed in three separate groups or categories, and the basis for our conclusions is set forth in the following discussion with respect to each of the three groups.

## I

### Lots Sold by Tax Deeds and Masters' Deeds

Plaintiff's title to Lots 3 to 8 in Block 5, Lot 8 in Block 3, and Lots 1, 2, and 3 in Block 1 in Titusville Beach Subdivision was sold by the State of Florida for nonpayment of taxes to purchasers whose deeds were recorded in 1934 and 1936.

By final decrees of foreclosure entered in the Circuit Court for Brevard County, Florida, plaintiff's title to Lots 1 to 7 in Block 3, Lots 1 to 8 in Block 2, Lot 2 in Block 5, Lots 1 to 8 in Block 4, Lots 4, 5, 6, in Block 1, and Lots 2, 3, 5, 7, 8, 9, 10, 12, and 15 in Block 6 was sold by Special Masters in Chancery to purchasers whose deeds were recorded in 1937.

Defendant acquired title by mesne conveyances from the purchasers of the lands at the tax sales and masters' sales. Plaintiff does not claim that either she or Walker Properties, Inc., was in possession of any of the lots after 1936, when the corporation was dissolved, or that the corporation or she has ever paid any taxes thereon since 1936.

Under the law of Florida, no person may assert any claim to lands as against a claimant, whose title is based on a deed that has been of record for 20 years. F.S. § 95.23, F.S.A. Foremost Properties v. Gladman, Inc., 100 So.2d 669 (Fla.App.1958); Lefkowitz v. McQuagge, 122 So.2d 328 (Fla.App.1960); Lefkowitz v. McQuagge, 230 F.Supp. 757 (N.D.Fla.1963), aff'd 334 F.2d 243 (C. A. 5, 1964).

Plaintiff acknowledges that the tax deeds and masters' deeds had been of record for more than 20 years prior to the filing of her suit and offers no opposition to defendant's motion for summary judgment with respect to these properties, except for her general denial. As we have held repeatedly, mere formal denials and general allegations are insufficient to prevent the award of summary judgment. Royal Indem. Co. v. United States, 178 Ct.Cl. 46, 371 F.2d 462, cert. denied, Jersey State Bank v. Royal Indem. Co., 389 U.S. 833, 88 S.Ct. 33, 19 L.Ed.2d 93 (1967), and cases cited therein. It is clear, therefore, that defendant is entitled to summary judgment as to these lots.

## II

### The Murphy Act Deeds

By deeds executed in 1944 and 1950, the State of Florida, through the Trustees of the Internal Improvement Fund, sold all of the lots in Blocks 7 to 13 inclusive, and Lots 12 to 16 in Blocks 15, 16, 17, 18, and 19 in the Titusville Beach Subdivision to purchasers from whom defendant deraigns title. The sales were made pursuant to the Murphy Act, F.S. § 192.38, F.S.A.

More than two years prior to the sales, there were outstanding tax certificates against these lots to which plaintiff claims ownership. The Murphy Act provides in substance that when tax certificates are outstanding for more than

two years, the fee simple title to the lands affected vests absolutely in the State and that all title or interest of the former owner, or anyone claiming under him, or anyone holding a lien on the land is terminated.

 Plaintiff's only opposition to defendant's motion for summary judgment with respect to these lots is the unsupported claim in her petition that Walker Properties, Inc., received no notice of the sales of the land. However, even if plaintiff's opposition were adequately supported, we would conclude that plaintiff has no right to compensation for the lots sold pursuant to the Murphy Act. In the condemnation cases where plaintiff made the same contention, the district court found that under the rules promulgated by the Trustees of the Internal Improvement Fund, effective August 9, 1941, notice to the former owner was not mandatory but only directional. The rules expressly provided that the failure to give notice to the former owner would in no way affect the sale made by the Trustees of the Internal Improvement Fund. United States v. 329.22 Acres of Land, Etc., Brevard Co., Fla., *supra*, Conclusion of Law, No. 5(e), 307 F.Supp., 34, 46–47 (1968). In deference to a court which is often required to construe the laws of Florida and particularly in the absence of any showing to the contrary by plaintiff, we reach the same conclusion and grant defendant's motion with respect to these lots.

### III

*The Property East of Ocean Boulevard*

This property consists of land which fronts on the Atlantic Ocean and is located east of a street designated as Ocean Boulevard on the original plat of the Titusville Beach Subdivision. Ocean Boulevard ran between the ocean and the lots located in Blocks 1 to 6, inclusive, of the Subdivision. On October 6, 1949, Ocean Boulevard was officially abandoned by order of the Board of County Commissioners of Brevard County. Since the order renounced the claim of the county and the public to Ocean Boulevard, its title reverted to the adjoining landowners.

By tax deed dated July 5, 1948, the State of Florida conveyed the land east of Ocean Boulevard to L. C. Crofton. The "beach" was specifically excepted from the land conveyed. The property acquired by L. C. Crofton was, in each instance, conveyed by specific description to each adjoining lot owner, and each of these owners has paid taxes thereon since 1949. The United States acquired title from the record owners in 1962, some 14 years after the tax deed to the beach area had been recorded.

In her motion for partial summary judgment, plaintiff makes several contentions. She first assails the validity of the tax deed on the ground that notice of the tax foreclosure was not given as was required by the laws of Florida. As shown by the documents attached to plaintiff's motion, notice was mailed to two of the three directors of the dissolved corporation. The notice to George R. Walker was mailed to 200 East Flagler Street, Miami, Florida, the address shown on the county records as the address of Walker Properties, Inc. An affidavit attached to plaintiff's motion states that at the time the notice was issued, George R. Walker's correct address (not the address to which the notice was sent) was listed in the Miami telephone directory and that his address could have been easily ascertained.

 Relying on Beaty v. Inlet Beach, 151 Fla. 495, 9 So.2d 735 (1942), defendant argues that the notice was sufficient to meet the requirements of the law and that it is immaterial whether the notice was received or not. However, we need not decide the question on the basis of that decision, because we think it clear that plaintiff's action is barred by the Florida statutes of limitations. F.S. § 95.12 and § 95.14, F.S.A. provide that no action may be brought to recover real property unless the plaintiff or his ancestor was seized or possessed of the land within the past seven years. Also, F.S. § 196.06, F.S.A. pro-

vides that no action by the former owner may be brought to recover possession of land against the holder of a tax deed unless it is brought within four years. Johnson v. Rhodes, 62 Fla. 220, 56 So. 439 (1911). It is established that the owners of the property through whom defendant acquired title had been in possession of the land adversely to any claim by plaintiff and had been paying taxes on it since 1949, more than seven years before this action was brought. The district court reached the same conclusion in the condemnation suits. United States v. 329.22 Acres of Land, Etc., Brevard Co., Fla., 307 F.Supp. at 49.

Plaintiff's main contention is that the tax deed was void and of no effect, because the ocean-front property was used by the public and could not be assessed for taxation. The affidavit attached to her motion states:

\* \* \* \* \* \*

All of the property lying East of Ocean Boulevard along the ocean front has been used by the public up until the time it was taken by the United States Government for its NASA program and closed to the public. It was used by the public for swimming, bathing, sunbathing, picnicing [sic] and the like. In short, it was used as a public beach. At no time prior to its taking by the United States Government was any part of the beach fenced off or otherwise appropriated for private use.

 If this contention is correct, plaintiff has no standing to demand relief since the public or the State of Florida, rather than plaintiff or Walker Properties, Inc., would be the true claimant. United States v. 936.71 Acres of Land, State of Fla., 418 F.2d at 555–557 (1969).

Finally, plaintiff argues that the easement which the public had to use the land as a beach was extinguished by the defendant's taking and closing of the ocean-front property. If it is assumed that plaintiff is the private owner and that her contention is correct, she would

be entitled to no compensation. On her own hypothesis, she would lose nothing because the public had already acquired an easement which destroyed her right to use the land. Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 54 L.Ed. 725 (1910).

In addition to what is said above, we do not believe that plaintiff has shown that the 1948 tax deed conveyed the beach area to which she claims the public had acquired an easement. As previously stated, the tax deed specifically excluded the beach, which is generally defined in the case law as that portion of the shore washed by the sea waves. Coburn v. San Mateo County, 75 F. 520, 531 (N.D.Cal.1896). Moreover, plaintiff has made no effort to show that there was any possibility that public use would have terminated, in any event, if the United States had not acquired the property and therefore that there was some residual value for private use.

For the reasons stated above, defendant's motion for summary judgment is granted, plaintiff's motion for partial summary judgment is denied, and plaintiff's petition is dismissed.