In re GENERAL COFFEE
CORPORATION, Debtor.

CITY NATIONAL BANK OF MIAMI
and City National Banking
Corporation, Plaintiffs,

v.

GENERAL COFFEE CORPORATION,
Defendant.

Bankruptcy No. 83–00889–BKC–TCB.
Adv. No. 84–0028–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

Aug. 21, 1984.

Michael Josephs, Coral Gables, Fla., Robert Schatzman, Coral Gables, for plaintiffs.

Alan Kluger, Miami, Fla., for defendant.

David Levine, Miami, Fla., for debtor/defendant.

Bert Hellman, Miami, Fla., for City National.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

Plaintiffs ask that a constructive trust be imposed for their benefit as creditors against the assets of the chapter 11 debtor. The predicate for the relief sought is alleged conversion, fraud, breach of fiduciary duty and unjust enrichment. The debtor has answered and counterclaimed seeking avoidance of the asserted lien under 11 U.S.C. § 544. Shawmut Boston International Banking Corporation, a major secured creditor, has intervened and supports the debtor's position. The matter was tried on August 10. The facts are undisputed.

In March 1982, the debtor expanded its coffee roasting business by purchasing the Chase & Sanborn division in New Orleans, Louisiana from Standard Brands. The purchase price consisted of $3 million cash, a note in the amount of $4.75 million, and an amount equal to the value of the inventory of coffee on the day before the closing. The amount paid for the inventory was $6,488,011. General Coffee paid this sum by a check drawn on its account at City National Bank of Miami.

The funds upon which this check was drawn are those funds which plaintiffs claim were wrongfully taken from them by a series of events which began with the bank's purchase in March 1982 of an $8 million certificate of deposit from Banco Exterior S.A. (Panama). The purchase was made on the recommendation of Camilio Bautista, who was simultaneously an officer and director of both Domino Investments, Ltd., which controlled General Coffee, and the plaintiff bank. The $8 million certificate was pledged by Bautista, without the plaintiffs' authorization, as collater-

al for an $8 million loan from Banco Exterior to Domino. Domino then transferred the $8 million to General Coffee and the money was deposited into its account at City National Bank of Miami.

Neither Domino nor General Coffee has repaid any part of the debt owed Banco Exterior, which has set off the certificate of deposit against the delinquent account. Plaintiffs have also sued Banco Exterior for the $8 million in an action pending in another court.

The Chase & Sanborn assets acquired by General Coffee through the agreement with Standard Brands included not only the inventory of coffee, which has been turned over numerous times since 1982, but also a plant in New Orleans, equipment and trademarks.

■ The debtor argues that plaintiffs have failed to trace their money into the hands and property of the debtor and, therefore, for that reason alone relief must be denied. The debtor points to the fact that the inventory of coffee purchased with money which may be traced back to the plaintiffs was sold long ago, and contends that plaintiffs have not discharged their burden of tracing the proceeds to specific assets presently under the debtor's control. I agree with the debtor that plaintiffs have the burden of tracing the trust res to specific assets when they seek the imposition of a constructive trust in bankruptcy. *Matter of Kennedy & Cohen, Inc.,* 612 F.2d 963, 965 (5th Cir.1980). However, I find that the trust res in the amount of $6,488,011 has been traced by the plaintiffs in its original or substituted form to assets presently within the control of the debtor. Plaintiffs have failed, however, to trace the remainder of the $8 million which is in question here.

For the purposes of this action, I also find that plaintiffs have proved a factual basis to justify resort to imposition of a constructive trust.

■ Debtor's primary contention, asserted in its counterclaim, is that a constructive trust imposed upon any asset of a bankruptcy estate *after the date of bankruptcy* can be avoided under 11 U.S.C. § 544(a). That section, the strong-arm clause, gives the trustee and a chapter 11 debtor-in-possession the right to avoid any obligation that would be voidable by a judgment creditor with a judicial lien on all property subject to a judicial lien at the commencement of the bankruptcy case. The trustee and, therefore, the debtor-in-possession is charged only with such notice as appeared on the public record at that time and is not charged with the debtor's actual knowledge of the circumstances relied upon by the plaintiffs. The purpose of this provision, of course, is to protect the debtor's creditors from secret liens concealed from them at the time they extended credit to the debtor. The constructive trust asserted here is indistinguishable from any other secret lien asserted for the first time after bankruptcy.

A majority of courts have held that for the purpose of notice statutes, a constructive trust is deemed to have attached to a debtor's property when the facts which give rise to the constructive trust occurred. However, in this instance, Florida law is clearly controlling [1] and it is equally clear that under Florida law:

> "a constructive trust comes into existence on the date of the order or judgment of a court of competent jurisdiction declaring that a series of events has given rise to a constructive trust." *Palmland Villas I Condominium Association, Inc. v. Taylor,* 390 So.2d 123, 124 (Fla. 4th DCA 1980).

In that case the court held that judgment liens attached to real property before the entry of a judgment imposing a constructive trust upon the property, even though

1. *Collier on Bankruptcy* (15th ed.) ¶ 544.02, n. 3; Restatement (Second) of Conflict of Laws § 148; If Louisiana law is controlling, it is clear that the Louisiana Civil Code prohibits the imposition of a constructive trust or equitable lien on any property. *Mansfield Hardwood Lumber Co. v. Johnson,* 268 F.2d 317, 319 (5th Cir.1959).

the trust was imposed by virtue of documents recorded three years earlier.

It is plaintiffs' argument that the trust property never became "property of the estate" as that term is defined in § 541. I disagree.[2] In *Palmland,* the Florida court rejected a similar contention:

> "Appellant's position is that the liens could not have attached since the property was a trust asset from the time of the conveyance and that the debtor-obligor was thereafter simply a trustee without power to pledge trust assets to secure its corporate obligations.
>
> .    .    .    .    .
>
> "Therefore, there was no trust in existence when the liens attached. Imposition of a constructive trust by the order of January 5, 1979, could have no effect on the validity or priority of those liens." *Id.* at 124–125.

In *In re Great Plains Western Ranch Co., Inc.,* 38 B.R. 899 (Bkrtcy.C.D.Cal. 1984), a colleague has discussed at length the interplay between §§ 544 and 541 in rejecting imposition of a constructive trust against the assets of a chapter 11 estate. That excellent discussion is applicable here.

In the final analysis, the issue here is whether an economic loss should be born by the bank's stockholders or by the debtor's creditors. Both groups were equally innocent of responsibility for causing the loss. Congress has resolved through § 544 that the debtor's creditors must at all costs be protected from secret liens. The Florida court has resolved that a constructive trust remains a secret lien until it is imposed by a court. In this case, plaintiffs neither sought nor obtained relief in time to avoid the impact of these two controlling policy determinations which are binding upon this court.

It follows that the debtor is entitled to avoid any constructive trust which plain-

tiffs are entitled to assert. Therefore, as is required by B.R. 9021(a), a separate judgment will be entered dismissing this complaint with prejudice. Costs may be taxed on motion.

---

2. I have not overlooked the statement in *Matter of Kennedy & Cohen, Inc., Id.* at 965, that "property held by a bankrupt in trust belongs to the beneficiary and never becomes a part of the bankruptcy estate." The statement was dicta. In that case, unlike this one, the trustee did not invoke the strong-arm clause to resist a post-petition attempt to impose a constructive trust. He defeated the constructive trust on other grounds. I know this is so, because this was a case I heard and the statement in question came from my decision.